**IN THE UNITED STATES DISTRICT COURT**

**DISTRICT OF NEW MEXICO**

UNITED STATES OF AMERICA,

      Plaintiff,

v.                                                                                                    CR No. 09-3597 LH

JOSE ERNESTO SALAS-GARCIA,

      Defendant.

**MEMORANDUM OPINION AND ORDER**

**THIS MATTER** comes before the Court on Defendant Jose Ernesto Salas-Garcia's Motion to Suppress (Doc. 39), filed February 22, 2010.  In this motion to suppress, Defendant seeks a *Franks* evidentiary hearing, pursuant to *Franks v. Delaware*, 438 U.S. 154 (1978), to challenge the validity of the search warrant.  For the following reasons, the Defendant's request for a Franks hearing will be **DENIED**.  The remainder of Defendant's motion to suppress will remain under advisement pending a hearing.

    **I.  FACTUAL BACKGROUND**

On December 16, 2009, a grand jury returned a two-count indictment against Defendant Salas-Garcia charging him with possession of cocaine with intent to distribute.  The indictment followed a search, performed pursuant to a warrant, of a 2003 red Dodge truck that Defendant was driving at the time.  The search resulted in the discovery of a block of cocaine, weighing approximately one kilogram, as well as other evidence against Defendant.

On February 22, 2010, Defendant filed a motion to suppress evidence against him, including the block of cocaine, miscellaneous documents, a bottle containing nine pills, a VISA debit card,

two cell phones, and post-seizure statements that he made to officers.  The search warrant and affidavit in support were attached to Defendant's motion as Exhibit 1.[1]  Oscar Villegas, a now-retired middle Rio Grande Valle Narcotics Task Force Agent with the Albuquerque Police Department, was the affiant who requested the warrant.  A District Judge for the State of New Mexico issued the warrant, which authorized the search of the 2003 red Dodge truck, license plate NM-KWC-993, and of Jose Ernesto Salas-Garcia.

### II.  CONTENTS OF THE AFFIDAVIT

In support of his application for search warrant, Agent Villegas' affidavit contained the following information:

Between September 2009 and December 2, 2009, a confidential informant advised Villegas that he had first-hand knowledge that Edgar Ortiz Castaneda brokered deals for an "unidentified Mexico organization" of large quantities of cocaine.  The informant claimed to have had conversations with Castanada and to have witnessed transactions for kilogram amounts of cocaine.  According to the informant, the drug transactions were brokered at an auto body shop located in the area of Old Coors SW and Gonzales SW.  Agent Villegas began investigating Castaneda, identifying his residence as 810 Foothill Dr. SW through public and law enforcement records.  Agent Villegas confirmed the identity of Castaneda with the informant by showing him a photograph of Castaneda.  The informant advised Agent Villegas that Castaneda owned a grey Ford Expedition.

---

[1] Although the affidavit attached to Defendant's motion initially identifies Defendant Salas-Garcia and the 2003 red Dodge truck as the person and place to be searched, the Court notes that the affidavit also alleges, at page six, that there was probable cause to believe that evidence of a crime would be found in a "Red Chrysler 300M" and "on the person of Edgar Ortiz Castaneda."  It appears that the reference to the red Chrysler and to Edgar Ortiz Castaneda may be inadvertent, or that a portion of an affidavit supporting warrant related to Defendant Salas-Garcia's co-defendant, Edgar Ortiz Castaneda, may have been mistakenly substituted for that portion of the affidavit related to Defendant Salas-Garcia.  Nevertheless, the factual allegations contained in the affidavit relate to Defendant Salas-Garcia, and the Court is able to adequately evaluate Defendant's allegations of material omissions on the present record.

Agent Villegas initiated surveillance of Castaneda at 810 Foothill Dr. SW and observed a Ford Expedition as well as a red Chrysler 300M sedan, which was without a license plate and had a "for sale" sign in the rear window. During surveillance, Agent Villegas observed Castaneda exit the residence at 810 Foothill Dr. SW and leave in the red Chrysler 300M. Agent Villegas followed Castaneda, who drove to "Mor Body Shop," which was located at 627 Old Coors SW. At 627 Old Coors SW, Agent Villegas observed unidentified subjects, who appeared to be associates rather than customers, arrive. He did not observe any legitimate business activity related to the auto body shop. Agent Villegas knew through past training and experience that drug traffickers often use businesses, such as but not limited to auto body shops, to conceal large quantities of drugs and to conceal vehicle and pedestrian traffic not associated with legitimate business. Additionally, Agent Villegas learned that an ICE investigation had referenced an "A&M auto shop" in 2000 at the same address. Agent Villegas knew, again through past training and experience, that drug traffickers often change the name of a business to give the appearance that ownership has changed, in an effort to elude law enforcement detection.

During surveillance at Mor Body Shop, Agent Villegas observed Castaneda speak "constantly" on his cell phone, keeping a "watchful eye" on passing traffic. He also saw Castaneda meet with an unidentified male and carry a rectangular box to the man's orange truck, while "looking around in all directions." Agent Villegas followed both men in the orange truck to the intersection of Eighth Street and Bell SW. Although Agent Villegas did not follow the men to the residence, because of the narrow street, he observed Castaneda unload the box and carry it into a residence. Castaneda returned to the truck within five minutes and left.

On December 2, 2009, Agent Villgeas and other members of the Middle Rio Grande Valley Task Force began a surveillance operation on Castaneda at 810 Foothill SW. Once again, Agent

Villegas observed Castaneda leave the residence at 810 Foothill SW in a red Chrysler 300M and drive to 627 Old Coors SW. Once at Mor Auto Shop, Castaneda went into the business. Agent Villegas received information from the informant that Castaneda was preparing to complete a large cocaine transaction that same day. Therefore, Agent Villegas maintained constant surveillance of Castaneda.

Castaneda left Mor Body Shop and drove directly to La Poblana Tortilla restaurant at 121 Old Coors SW, where he parked but did not exit the Chrysler 300M. Approximately two to three minutes later, Agent Villegas observed a 2003 red Dodge truck, license plate KWC-993, arrive at the restaurant and park next to Castaneda's vehicle. The driver of the Dodge truck met and shook hands with Castaneda and the two men walked through two large wooden gates leading to the rear of the business, out of Agent Villegas' view. The driver of the red Dodge truck was identified as "Jose Ernesto Garcia." Approximately two minutes later, the men returned to their respective vehicles and left 121 Old Coors SW, driving east on Central SW. The red Dodge truck driven by Defendant followed the Chrysler 300M driven by Castaneda.

Concurrent with the surveillance operation, the informant confirmed that Castaneda was, in fact, on his way to deliver a large quantity of cocaine. Agent Villegas knew through past training and experience that drug traffickers often use two or more vehicles as a counter surveillance technique and that often times drugs are kept in a second vehicle until the drug transaction is complete and monies are received.

Agent Villegas and other surveillance units followed the two vehicles to Presbyterian Hospital, where Castaneda parked his red Chrysler 300M in the parking lot at the emergency entrance. Defendant passed Castaneda and continued east to the main hospital entrance. At this time, Agent Villegas advised marked units with the Albuquerque Police Department to stop each

vehicle.

Agent Villegas and Agent C. Davis contacted Defendant, advising him of his constitutional rights in Spanish. Defendant indicated that he understood and waived his rights. Agent Davis asked Defendant if he had any drugs or weapons in his vehicle, and Defendant advised that he was in possession of a kilogram of cocaine, which was lying on the front seat of the red Dodge truck.

### III. ANALYSIS

Defendant urges this Court to suppress evidence against him based on allegedly false statements or, more accurately, omissions in the affidavit in support of the search warrant. Pursuant to *Franks*,

> where the defendant makes a substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in a search warrant affidavit, and if the allegedly false statement is necessary to the finding of probable cause, the Fourth Amendment requires that a hearing be held at the defendant's request.

*Franks*, 438 U.S. at 155-56. Thus, a defendant must satisfy a two-prong test to be entitled to a Franks hearing. First, the defendant must make a substantial showing that a false statement was knowingly, intentionally, or recklessly included in the affidavit. Second, the Court must find that the statement was necessary to a finding of probable cause.

Discussing the circumstances necessitating an evidentiary hearing, the Court further explained in *Franks*:

> There is, of course, a presumption of validity with respect to the affidavit supporting the search warrant. To mandate an evidentiary hearing, the challenger's attack must be more than conclusory and must be supported by more than a mere desire to cross-examine. There must be allegations of deliberate falsehood or of reckless disregard for the truth, and those allegations must be accompanied by an offer of proof. . . . Finally, if these requirements are met, and if, when material that is the subject of the alleged falsity or reckless disregard is set to one side, there remains sufficient content in the warrant affidavit to support a finding of probable cause, no hearing is required.

*Id.* at 171-72.

Significantly, in *United States v. Avery*, 295 F.3d 1158 (10th Cir. 2002), the Tenth Circuit expanded *Franks*, holding that "[t]he standards of deliberate falsehood and reckless disregard set forth in Franks apply to material *omissions* as well as affirmative falsehoods." *Id.* at 1162 (emphasis added). However, not every omission of relevant information is regarded as "material." *Stewart v. Donges*, 915 F.2d 572, 582 (10th Cir. 1990). Instead, "[t]he omitted information must be so probative as to negate probable cause." *Id.*

Defendant contends that Agent Villegas deliberately omitted three important facts, rendering the warrant void for lack of probable cause. First, he contends that Agent Villegas should have included in his affidavit that "Defendant credibly was at the Hospital to pick up Antoinette Salas, his ex-wife, so credible that Ms. Salas was released." (Doc. 40, at 13.) Next, he claims that Agent Villegas should have noted that Defendant's confession that he possessed a kilogram of cocaine occurred only after Agent Villegas left the scene, after Defendant was detained and arrested for some unidentified length of time, and after DEA Agents Mauldin and Baker arrived. (*Id.*) Finally, Defendant contends that Agent Villegas should have explained in his affidavit that Defendant's confession occurred after Agent Davis told him "that his vehicle was being secured at the scene pending a search warrant." (*Id.*) According to Defendant, the knowledge of these facts "rendered all implications in the Affidavit that [Defendant] was involved in a cocaine deal with Mr. Castaneda . . . false or made with reckless disregard for the truth." (*Id.* 13-14.) The Court cannot agree with Defendant.

Rather, in the Court's view, none of the alleged omissions were material to the probable-cause determination. Nor has Defendant made a substantial preliminary showing that Agent

Villegas swore out the affidavit knowing it to lack vital information or with reckless disregard for the truth.  Nothing presented to this Court – not even the discovery information referenced, but not attached, by Defendant in his motion to suppress – supports an allegation that Agent Villegas acted intentionally or recklessly to conceal material facts from the issuing judge. Indeed, none of the alleged omissions would have been substantially beneficial to Defendant or have provided exculpatory evidence related to his participation in the subject cocaine transaction.

    First, while there is no question that Agent Villegas omitted any reference to Defendant's ex-wife, who was apparently released after officers were advised that she was getting a ride from Defendant after work, the fact that Defendant may have stopped at Presbyterian Hospital for a legitimate purpose did not somehow negate probable cause to believe that Defendant was involved in criminal activity.  Nor did it suggest that the suspected criminal activity had ceased.  After all, Castaneda was waiting in a parked vehicle nearby, at a separate entrance to the same hospital.  That Agent Villegas neglected to include information regarding Defendant's ex-wife or Defendant's allegedly legitimate detour to Presbyterian Hospital is not the equivalent of intentionally or recklessly misleading the issuing judge regarding the relevant facts establishing probable cause.  *See Franks*, 438 U.S. at 170 (a showing of negligence in recording the facts relevant to a probable-cause determination does not necessitate a Franks hearing).

    There is also no question that Agent Villegas omitted some of the circumstances surrounding Defendant's confession.  But the failure to include each and every detail surrounding the confession, or to relate the exact statements that were made to Defendant prior to his confession, is not tantamount to a material omission in violation of *Franks*.  A magistrate

is entitled, and even expected, to make reasonable, common-sense inferences. *See United States v. Rowland*, 145 F.3d 1194, 1205 (10th Cir. 1998). Here, it would have been reasonable for the magistrate to infer that Defendant's admission that there was cocaine in his truck came after some discourse with the various officers involved and that various officers may have come and gone during the course of Defendant's detention.

Moreover, Agent Villegas *did* specify in his affidavit that Defendant told *Agent Davis* about the cocaine. He does not state or even imply that he elicited the confession, or that he was present when it occurred. As such, the affidavit is not false or misleading in this regard. Further, that Agent Villegas had already left the scene of the traffic stop, in anticipation of securing a search warrant, is immaterial. According to the discovery referenced by Defendant, Agent Davis advised Agent Villegas of Defendant's admission via telephone before Agent Villegas swore out the affidavit. Agent Davis may or may not have provided details of the remarks that precipitated the admission to Agent Villegas. Regardless, the alleged omissions were, again, immaterial to the probable-cause determination.

Presumably, Defendant's position is that because his admission came only after he was told that his car would be searched pursuant to a warrant and only after he had been detained for some period of time and questioned by various officers, it somehow undermines the probable-cause determination. However, in the context of a Franks hearing request, it is of only marginal relevance, if any, that officers advised Defendant that they were pursuing a search warrant or that Agent Villegas left and DEA Agents Mauldin and Baker arrived. *See United States v. Williams*, 737 F.2d 594, 604 (7th Cir. 1984) (reasoning that where the omitted fact was of marginal value, no violation occurred under *Franks*). The omitted information is certainly not so probative as to negate probable cause or necessitate a Franks hearing. *See Stewart*, 915 F.2d

8

at 582. Though the Court may consider at an upcoming suppression hearing whether the duration of Defendant's detention was proper and whether Defendant's confession was voluntary, Defendant does not meet his substantial preliminary burden under *Franks* by merely noting that Agent Villegas failed to include these particular details of his detention and confession in the supporting affidavit. *Cf. United States v. Whitaker*, No. 00-4158, 2001 WL 883257, at *3 (10th Cir. Aug. 7, 2001) (unpublished) (affirming the district court's denial of a Franks hearing request, where the affidavit in support of the search warrant omitted information regarding the "stressful nature" of the co-defendant's confession, inconsistencies in his confession, and the fact of his recantation).

### IV. CONCLUSION

For all of these reasons, the Court concludes that Defendant has not made the substantial preliminary showing required by *Franks*, and thus, his request for a Franks hearing is denied.

**IT IS THEREFORE ORDERED** that Defendant Salas-Garcia's motion for a Franks hearing is hereby **denied**. The remainder of Defendant's motion to suppress remains under advisement pending a hearing.

_____
SENIOR UNITED STATES DISTRICT JUDGE